Robert Smith, by Marion Barrett, Next Friend, Appellant, v. Gail Saum, Also Known as Gail Smith, Appellee.

Gen. No. 43,117.

Opinion filed December 11, 1944.  Released for publication December 27, 1944.

HARRY G. JOHNSON, of Chicago, for appellant.

WALTER B. PRENDERGAST and CHARLES P. R. MACAULAY, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

November 26, 1943, plaintiff, by his next friend, filed his complaint in chancery praying that an alleged marriage entered into between him and defendant be declared null and void.  Defendant filed a motion to dismiss the complaint and on February 15, 1944, an order was entered sustaining the motion, the complaint was stricken, plaintiff elected to stand by his complaint, the suit was dismissed for want of equity and on March 10, he filed his notice of appeal.

March 14, defendant filed her verified petition in which she set up that plaintiff was prosecuting an appeal to this court having filed his notice of appeal; that she had no funds to defend the appeal, was wholly destitute

and dependent on the charity of her friends and relatives, expected she would give birth to a child in the near future, and prayed that an order be entered allowing her attorney's fees and costs in defending the appeal. Plaintiff moved to strike the petition on the ground that the court had lost jurisdiction since plaintiff had filed his notice of appeal. March 27 the court entered an order in which it was recited that defendant had filed her petition "for attorney's and court costs to defend the Appeal." That plaintiff had filed a motion to strike which the court overruled and it was further ordered that plaintiff pay to defendant $325 "as Court costs, Appeal expenses and attorney's fees to defend plaintiff's Appeal." From this order defendant filed a notice of appeal.

The complaint filed by plaintiff by his next friend, praying that the marriage be decreed null and void, set up that plaintiff was 18 years and defendant 19 years of age. That he was a Gunner's Mate Third Class, United States Navy; that while on leave of absence he was visiting his aunt, his next friend, with whom he made his home when he was not in the naval service; that on November 22, 1943, plaintiff was arrested on the complaint of defendant charging him with being the father of her unborn child; that he was placed under arrest, taken to the police station and there delivered into the custody of the "Shore Patrol of the United States Navy," was taken to the Naval Armory at the foot of Randolph street, Chicago, where he was confined until the next morning without any opportunity to consult an attorney as to his rights; that on the following morning the Petty Naval Officer took him to the Municipal court of Chicago, where a bastardy charge against him was pending and he appeared before Judge Kula of that court; that plaintiff remonstrated with the Petty Officer in whose custody he was, that he was not and could not be the father of the unborn child as charged; that upon arrival at the court room of Judge Kula, plaintiff's aunt,

Marion Barrett, his next friend in the instant proceeding, sought to consult with him about the matter but was not allowed to do so by the officer who had charge of him; that when the case was called for hearing the Petty Officer in whose custody he was, told the court without consultation with plaintiff that plaintiff was willing to marry defendant if the proceedings were dismissed. That thereupon the proceedings were dismissed and he was released by the Petty Officer to a policeman who took plaintiff, defendant, defendant's mother, defendant's step-father and plaintiff's aunt, Marion Barrett, in a squad car to the License Bureau in the County Building where application was made for a marriage license, but because of his tender years it was necessary for a guardian to be appointed for him to consent to the issuance of the license. Thereupon he was taken by the officer to the office of the Public Guardian where the proceeding was had before the Acting Probate Judge and a guardian appointed for him. The parties then returned to the marriage license office where a license was obtained. The parties then went to the Acting Probate Judge where the marriage ceremony was performed; that after the ceremony defendant and her relatives left and plaintiff returned to the home of his aunt, Mrs. Barrett; that he was immature and inexperienced and had no opportunity to consult with counsel, friends or relatives to ascertain what his rights were; that by reason of "fear, intimidation, threats and representations made to him he was induced to enter into said purported marriage;" that he did not freely and voluntarily consent to marry defendant but did so because he thought the Naval Petty Officer had authority to compel him to do so; that the marriage was never consummated and that he had never lived or cohabited with defendant since the ceremony; that immediately after the marriage he sought advice from the Soldiers' and Sailors' Service Council and was referred to the Chicago Bar Association.

It was further averred that plaintiff was not and could not be the father of the unborn child and defendant well knew that the charge she made against him in the Municipal court was false and untrue; "That in truth and in fact, said 'pregnancy of the defendant herein was brought about by some person other than the plaintiff, and at a time when the plaintiff had no access to said defendant." And the prayer was that a decree be entered declaring the marriage null and void.

We think the court did not err in striking the complaint. Par. 15, ch. 17, Ill. Rev. Stats. 1943 [Jones Ill. Stats. Ann. 109.165], which is the chapter on Bastardy provides: "If the mother of any bastard child and the reputed father shall, at any time after the time of its birth, intermarry, the said child shall, in all respects, be deemed and held legitimate."

A marriage entered into by a man in order to secure his release from arrest on a charge of seduction or bastardy will not be annulled on the ground of duress, where the charge was not made maliciously or without probable cause. *Thorne v. Farrar,* 57 Wash. 441, and authorities there cited. See also *Griffin v. Griffin,* 130 Ga. 527; *Gass v. Gass* (Court of Civil Appeals of Texas) 182 S. W. 1195; *Sherman v. Sherman* (Iowa) 156 N. W. 301.

In the *Thorne* case, suit was brought to annul a marriage on the ground of duress. At the close of plaintiff's evidence the judgment dismissing the suit was entered and plaintiff appealed. The court there said: "If a man lawfully arrested on process for seduction, the prosecution being based upon probable cause, marries the woman to procure his discharge, he cannot annul the marriage upon the ground of duress. *Marvin v. Marvin,* 52 Ark. 425, 20 Am. St. 191; *Jackson v. Winn,* 7 Wend. 47, 22 Am. Dec. 563; *Sickles v. Carson,* 26 N. J. Eq. 440.

" 'A marriage brought about by force, duress, abduction, or terror under threats may be annulled. But these influences must have been brought to bear by the

other contracting party or with his procurement or connivance. And threats of any legal or penal measures authorized by law and the circumstances of the case will not invalidate the contract. Thus, in particular, if a man under lawful arrest for seduction or bastardy, the complaint being based on probable cause, chooses to marry the woman as a means of obtaining his release and terminating the proceedings against him, he cannot allege duress as a ground for annulling the marriage. But it is otherwise if the prosecution was maliciously instituted and without probable cause, or if the accused, being pliant and inexperienced, is bullied by the magistrate and yields under threats of more severe penalties than the law allows.' 26 Cyc. 906, 907.''

In the instant case we think it clearly appears that the proceeding in the Municipal court was brought in good faith. There is no allegation that plaintiff did not have illicit relations with defendant but we think the contrary appears.

The Supreme court of Iowa in the *Sherman* case, above cited, after announcing the rule which we have above quoted from the Washington Supreme court said: ''That they intended to have plaintiff marry the girl or to face a prosecution for his prior conduct may be conceded; but this alone will not avoid the marriage,'' citing cases from Arkansas, Vermont and other jurisdictions, and continuing the court said: ''Any other rule would make the statute which permits one accused of seduction to avoid the consequences of a prosecution for that offense contrary to public policy and against good morals. He who advantages himself of such a statute must incur all the burdens which it imposes, and it was not intended that the party should go through an idle ceremony, and thus purge himself of a wrong not only to an individual but the state itself. Its manifest object was to legitimatize issue born, secure their future support and make it possible for the guilty party to rectify his wrong. That fear of prose-

cution or conviction of an offense was the impending motive is no reason for invalidating the marriage. In 99 cases out of 100 such marriages are induced by fear. And, if the charge is not falsely and maliciously made, and without probable cause, it cannot be said that the marriage in a legal sense was under duress.''

Counsel for plaintiff further contends that ''When notice of an appeal has been served and filed the cause is transferred to the Appellate Court and the trial Court has no jurisdiction to enter any orders.'' We think this contention cannot be sustained. *Hart v. Hart,* 198 Ill. App. 555. In that case we held that section 15 [par. 16] of the Divorce Act, ch. 40, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 109.183], applied to suits to annul void or voidable marriages and it is the universal practice and in accordance with the law, for a trial judge in a proper case to award solicitors' fees and court costs to follow the appeal. But we are of opinion from the record before us that the amount of such allowance should not exceed $125, and we therefore modify such allowance accordingly.

The decree of the Superior court of Cook county is affirmed and the order appealed from will be affirmed, as modified.

*Decree affirmed, order modified and affirmed.*
NIEMEYER, P. J., and MATCHETT, J., concur.