**Clarence John Arndt, Appellant, v. Margaret Haas Arndt, Appellee.**

**Gen. Nos. 43,796, 43,831.**

O'Connor, P. J., and Feinberg, J., dissenting in part.

Opinion filed April 21, 1947. Rehearing denied May 5, 1947. Released for publication May 5, 1947.

Aiken, McCurry, Bennett & Cleary and Eugene J. Graber, all of Chicago, for appellant; Charles R. Aiken, of Chicago, of counsel.

Arthur and Edward Goldblatt, both of Chicago, for appellee.

Mr. Justice Niemeyer delivered the opinion of the court.

Plaintiff appeals from a second decree dismissing his complaint for annulment of his marriage to defendant and from a subsequent order directing the payment of $150 for attorneys' fees and expense money in defending the first appeal. These appeals have been consolidated.

The complaint charged that the marriage had been induced by duress and the fraudulent representation that plaintiff was the father of the child with which defendant was pregnant. Defendant answered, denying the charges of duress and fraud, and affirming that plaintiff was the father of her child. She also filed a counterclaim for separate maintenance, or, in the alternative for divorce on the ground that from and after the marriage ceremony plaintiff had without cause refused to live and cohabit with her. After a trial the court entered a decree, January 9, 1946, finding that plaintiff was the father of defendant's child and dismissing the complaint and counterclaim for want of equity. No appeal was taken from that decree.

Within 30 days plaintiff filed a petition which, as amended, recites that the finding in the decree as to the paternity of the child was based on testimony on behalf of defendant that plaintiff was in the City of Chicago in the period from June 13 to and including June 20, 1943. That during all that time plaintiff was in the State of Mississippi as a member of the Army of the United States, and that certain witnesses named in the petition would so testify; that, as the court on the first hearing of evidence had ruled that the paternity of the child was immaterial, no finding on that question should have been made. No other objection to the decree was raised. The petition ended with the following prayer: "Wherefore, your petitioner prays that the decree heretofore rendered and entered in this cause, on January 9, 1946, may be vacated and set aside in order that the newly discovered evidence hereinbefore set forth may be introduced in this cause; . . . or, in the alternative, that a new decree may be entered in this cause expressly refraining from adjudicating any question as to the paternity of the defendant's child."

■ April 3, 1946, the court vacated the first decree and entered a second decree, identical with the first except that the paragraph containing the finding that plaintiff was the father of defendant's child was eliminated, and in lieu thereof there was inserted in the second decree a paragraph stating the contention of the respective parties as to the paternity of the child, and concluding, ". . . this court does not make any finding with respect to the paternity of said child." This decree gave the plaintiff exactly the relief and all the relief he asked in the alternative prayer of his petition. Under such circumstances he cannot appeal from it, and his appeal must be dismissed. *McDonald v. Shimeall*, 282 Ill. 42; *Henry v. Metz*, 382 Ill. 297; *City of Chicago v. Sayer*, 330 Ill. App. 181; *McNulty v. Hotel Sherman Co.*, 280 Ill. App. 325.

The second appeal attacks the entry of an order by the trial court, after the appeal from the decree dismissing the complaint had been perfected, requiring the plaintiff to provide defendant with money to meet the expenses of the appeal. The only Illinois case specifically dealing with this question is *Smith v. Saum,* 324 Ill. App. 299, where, as further examination of the question shows, this court reached the right conclusion but erred in the reasons assigned.

We have no statute on annulment of marriages and no statute relating to the allowance of support money, solicitors' fees and expense money in marital proceedings, except in respect to divorce and separate maintenance. Whatever jurisdiction the court had to enter the order before us must be found in the general powers of the court. The answer to the question being considered is found in the early practice in Illinois in divorce and separate maintenance suits. In each proceeding the reasons supporting the allowance and the power of the court to direct it are, in the absence of a statute, the same. Within the statutory jurisdiction of divorce, courts of equity exercise their general powers. *Smith v. Smith,* 334 Ill. 370; *Smith v. Johnson,* 321 Ill. 134. Prior to 1874 the statute on divorce provided for alimony on the entry of a decree, but was silent as to alimony *pendente lite.* In *Petrie v. People,* 40 Ill. 334, a contempt proceeding, defendant insisted that the trial court erred "in allowing alimony to enable complainant to employ counsel and otherwise prepare for the prosecution of her suit," and questioned the power of the court to make the order "upon the ground that the statute regulating proceedings in divorce contains no express authority for the purpose, the statute only, in terms, authorizing the court to allow permanent alimony by the final decree." In affirming the trial court the Supreme Court said (p. 341) : "Without citing further authorities, we may safely say, that the general Ameri-

can doctrine is, that the wife may have alimony *pendente lite,* as well as money to defray the expenses of the suit, even in the absence of statutory provision to that effect, upon the principle that alimony is an incident to the divorce, and that the jurisdiction of the latter necessarily includes the power to·enforce such a right, as a legal attendant upon the marital relation, under the circumstances under which the parties litigant are placed. Bishop on Marriages and Divorce, sec. 574. Moreover it will not be questioned that this right existed as a part of the common law jurisdiction, and we have expressly adopted the common law as a part of our jurisprudence. It is true that this jurisdiction was exercised in Great Britain in the ecclesiastical courts, but is none the less, for that reason, a common law jurisdiction, in harmony with our institutions, and essentially necessary to the attainment of justice.'' And (p. 343): ''We are fully satisfied that the weight of authority as well as reason and justice all unite in support of the rule, that the Court of Chancery in this State, having power to grant divorces, has also the incidental power to allow temporary alimony *pendente lite,* and therefore, the Superior Court did not exceed its jurisdiction in granting the order complained of and assigned for error.'' To the same effect are *Newman v. Newman,* 69 Ill. 167; *Trotter v. Trotter,* 77 Ill. 510; *Dow v. Eyster,* 79 Ill. 254; *Johnson v. Johnson,* 20 Ill. App. 495, suit for separate maintenance. That allowances for solicitors' fees and suit money are in the nature of allowances for alimony and governed by the same rules, see *Johnson v. Gerald,* 216 Ala. 581; *Allen v. Allen,* 180 N. C. 465; *Winslow v. Winslow,* 133 Tenn. 663. The greater weight of authority supports the allowance of temporary alimony, including solicitors' fees and suit money, in suits for annulment of marriages in the absence of statutory authorization. 35 Am. Jur., Marriage, sec. 70, and cases cited. Defendant's right to the allow-

ance was not affected by the dismissal of her counter-claim for separate maintenance. *Medlin v. Medlin,* 175 N. C. 529. It may be added that the necessity for such allowance was created subsequent to the decree denying separate maintenance and by action of the plaintiff at a time when under the ruling of the court the defendant was, and still is, the wife of plaintiff.

Lastly, plaintiff contends that whatever power the trial court had to direct the payment of solicitors' fees and suit money was lost by the perfect-ing of the appeal, citing *Cowdery v. Northern Trust Co.,* 321 Ill. App. 243 (opinion by the writer of this opinion), and *Kohler v. Kohler,* 326 Ill. App. 105. Neither of these cases was a divorce, separate main-tenance or annulment of marriage proceeding. How-ever, in each case *Jenkins v. Jenkins,* 91 Ill. 167, was cited. That case involved an order by the trial court for solicitors' fees for the wife's defense of the appeal taken by the husband from a decree of divorce in favor of the wife. In answering the husband's contention that the trial court had no jurisdiction to entertain the motion and order solicitors' fees after the cause had been removed to the Supreme Court, that court said: ". . . were it not for sec. 15, chap. 40, R. L. 1874, page 421, we would have no hesitation in holding that appellant's position was well taken,—that after the appeal was consummated and the cause was removed to this court, the circuit court had no right to require appellant, by decree or otherwise, to pay attorney or solicitors' fees; but the section of the statute referred to in plain and express terms confers the power upon the circuit court, and the law as enacted by the legis-lature must control.'' If the statement as to what the court would have held in the absence of a statute is not obiter dictum, it is inconsistent with *A. R. Barnes & Co. v. Chicago Typographical Union,* 232 Ill. 402, 410, 411. Diligent search has failed to reveal an au-thority holding that the statement of a court as to what

its decision would be in a suppositious case, is a judicial determination of that case, to be followed when and if the case is before the court. The question presented in the *Jenkins* case was the power of the court to enter the order under the statute. This did not require determination of the power of the court in the absence of the statute. It did not present for decision all questions relating to the power of a trial court to enter orders pending an appeal. The expression in the *Jenkins* case is not like those considered in *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462, 470, and the cases there cited. In the *Scovill* case plaintiffs in error insisted that certain statements in *Swisher v. Deering,* 204 Ill. 203, were *dictum.* The *Swisher* case was an action against a guarantor to collect the amount owing by his principal to plaintiff under a contract of agency. One of the points raised on appeal was the admissibility in evidence of a statement of account showing the balance due plaintiff from the principal. The Supreme Court held the statement to be admissible under the general rules of evidence, and also because of the special provisions of the contract making the written acknowledgment of the principal binding on the guarantor. In the *Scovill* case the plaintiff in error insisted that the statement of the Supreme Court in the *Swisher* case as to the admissibility of the statement of account under the general rules of evidence was mere *dictum,* because of the special provisions of the contract. The court, however, thought it was not *dictum,* and added: ". . . even if it was, it was the expression of opinion upon a point in a case deliberately passed upon by the court and should be held as judicial *dictum* rather than mere *obiter.*" A point in the *Swisher* case presented for decision was the admissibility of a statement of account by a principal in an action against his guarantor. On this point the Supreme Court specified two reasons for its decision, each applicable to the facts presented in the record.

In the *Jenkins* case the power of the trial court to enter the order questioned, in the absence of a statute, was not a point in the case, and the entry of such an order was not a fact presented by the record. The statement of the court as to what its ruling would have been had the order been entered in the absence of a statute, is pure *obiter dictum*. *McAdams v. McAdams,* 267 Ill. App. 124 ( opinion by this court) ; *People v. Kennedy,* 367 Ill. 236, 241; *People v. Callopy,* 358 Ill. 11, 19; *Brush v. Commissioner of Internal Revenue,* 300 U. S. 352, 373; *Osaka Shosen Kaisha Line v. U. S.,* 300 U. S. 98; *McLaren v. Fleischer,* 256 U. S. 477, 482; *Nichols v. St. Louis & S. F. R. Co.,* 227 Ala. 592; *Hills v. Superior Court,* 207 Cal. 666.

■ The general rule, universally recognized, is that a duly perfected appeal divests the trial court of further jurisdiction of the cause in which the appeal has been taken. This rule, however, is not without exceptions. As said in 3 Am. Jur., Appeal and Error, sec. 531, ''An appeal or error proceeding *divests the trial court of jurisdiction over matters necessarily involved in the review proceeding only.* The court has jurisdiction to hear and determine questions arising in proceedings independent of, and collateral to, the proceeding wherein the judgment or order appealed from was rendered. It does not, for example, deprive the trial court of jurisdiction to entertain a motion for . . . alimony and counsel fees pendente lite pending an appeal from a divorce decree.'' (Italics ours.) In Elliott on Appellate Procedure, sec. 545, the author says : ''Matters independent of and distinct from the questions involved in the appeal are not taken from the jurisdiction of the trial court. Such matters as the appeal does not cover are purely collateral or supplemental, *lying outside of the issues framed in the case, or arising subsequent to the delivery of the judgment from which the appeal is prosecuted.* The general rule that a case leaves the jurisdiction of the trial court

when an appeal is perfected is not impinged by holding that purely collateral or *supplemental* matters are left under the control of the trial court, notwithstanding the loss of jurisdiction over the case taken to the higher court.'' (Italics ours.) This rule has been recognized in Illinois. In *A. R. Barnes & Co. v. Chicago Typographical Union, supra,* where the right of the trial court to punish certain defendants for violation of an injunction pending an appeal from the injunctional decree was questioned, the court said (410-411): ''The Appellate Court reviews the record brought to it by the appeal, which includes nothing happening after the decree is entered, and the question whether the injunction was obeyed or disobeyed is not involved in the appeal. No reason is apparent to us why the superior court should be refused the right to maintain its authority *as to a matter not affected in any way by the appeal and which is not dependent in any respect on the final outcome of the suit* until the decree has been affirmed by the Appellate Court, since the question whether the decree was erroneous or not is in no way involved in maintaining the existing status.'' (Italics ours.) The order for solicitor's fees in the present case relates ''to a matter not affected in any way by the appeal and which is not dependent in any respect on the final outcome of the suit.'' In the *Jenkins* case, *supra,* the decree in favor of the wife was reversed on appeal, and it was expressly held that such reversal did not require reversal of the order for solicitors' fees in unsuccessfully defending the appeal. To the same effect is *Fasken v. Fasken* (Tex. Civ. App.), 260 S. W. 698. Unlike the order in the present case, the orders in the *Cowdery* and *Kohler* cases, cited by plaintiff, held to have been improperly entered pending appeals, would be affected by the result of the appeals and the propriety of each order was dependent on the final outcome of the suit.

 Cases in other states upholding the right of trial courts to grant alimony and suit money pend-

ing an appeal in the absence of statutory provision authorizing the allowance, are *White v. White,* 106 Pa. Super. 85, 161 Atl. 464; *Ex parte Lohmuller,* 103 Tex. 474; *Maxwell v. Maxwell,* 67 W. Va. 119. In the latter case the court says (124-125) : "If, after an appeal of a divorce case, the wife seeks to be paid suit money or maintenance pending the appeal, she must apply therefor in the circuit court. Since the matter is of original and not appellate cognizance, it must be litigated where there is original jurisdiction for it, and where original evidence may be heard upon it. It is no part of the appeal. It is indeed a new case. Though the procedure is collateral to a case on appeal, yet it involves a matter that is independent of any question raised by the appeal. It embraces a showing that was not made in the court below, and which therefore could not be embraced in the appeal. That showing could not be made until the appeal was taken, for the showing itself is that of the pendency of the appeal and the necessity for suit money and maintenance which that appeal has caused. The making of this showing in the circuit court is not prevented by the appeal. That appeal affects only that which has been done by the circuit court. It removes the case to the appellate court for review of what the circuit court has already done. It does not deprive the circuit court of jurisdiction to make orders in the cause upon matters that are distinct from the questions involved in the appeal and especially those which are in aid of the appeal." So, in this State, this court having only appellate jurisdiction (*Goodrich v. Sprague,* 376 Ill. 80, 85), the application must be made in the trial court. This has been the practice. *Hunter v. Hunter,* 100 Ill. 477. To hold otherwise would be to deprive the defendant of her remedy.

The appeal from the decree dismissing the complaint for want of equity is dismissed. The order allowing suit money pending the appeal is affirmed.

*Appeal dismissed. Order affirmed.*
(See next page.)

Mr. Presiding Justice O'Connor dissenting in part.

In my opinion the decree appealed from should be affirmed. Plaintiff filed his complaint alleging that the marriage entered into between him and defendant was caused by fraud and duress on the part of defendant, she representing that he was the father of the child with which she was pregnant. She denied the charge and alleged facts, which if true, would show that his claim was wholly without merit. The court heard the evidence and entered a decree in which it was found that the marriage entered into between the parties is a "good and legal marriage; that the same remains in full legal force and effect and that Clarence John Arndt and Margaret Haas Arndt are husband and wife." That the "child is the child of the said Clarence John Arndt and the said Margaret Haas Arndt." And it was decreed that the complaint be dismissed for want of equity. The decree, as stated in the foregoing opinion, was, on petition of plaintiff, vacated and set aside and a new decree entered eliminating the finding in the former decree, that the child was the child of plaintiff and defendant.

The complaint was filed September 13, 1944, in which plaintiff alleged that he and defendant had intimate relations on April 13, 1943, and that the next day he went back to military service in Mississippi and did not, after that time, have carnal knowledge of her; that in July, 1943, she told him she was pregnant. Defendant filed her answer October 13, 1944, in which she admits the illicit relations on April 13, 1943, while he was on furlough and avers that plaintiff often, on week-end passes, came to Chicago up to June 13, 1943, and that he was in Chicago and visited her on Father's Day, which was June 13, 1943. Plaintiff filed his reply to the answer denying that he came to Chicago on week-ends up to and including June 13, and further denied that he visited defendant on Father's Day in

June, which he avers "was on the 20th day of that month or on June 13th, 1943."

As stated in the opinion, the original decree was entered January 9, 1946, and it was not until February 7, thereafter, that plaintiff filed his petition to vacate the decree so as to permit him to take depositions of witnesses who lived in Mississippi and with whom he had there visited on June 13 and 20, 1943. It seems to me this was a rather late date to attempt to take depositions when he had been advised by defendant in her answer which was filed October 13, 1944, (nearly 14 months before) that he had been in Chicago June 13, 1943, and there is nothing in his petition to show that he was taken by surprise, nor could there be, nor is any excuse made for the delay.

The record further discloses that both parties lived in Chicago and had been keeping company for 7 or 8 years. The chancellor saw and heard the witnesses testify but plaintiff has not preserved the evidence in the record before us. I am clearly of opinion there is no merit in plaintiff's contention that the marriage was brought about through fraud or duress of defendant; that the court properly found the marriage was valid, that the child was the child of the parties; and that the complaint be dismissed for want of equity.

I agree with the result reached in the foregoing opinion as to the allowance of solicitors' fees and in addition to the authorities cited in the opinion, I call attention to *Cowls v. Cowls,* 8 Ill. (3 Gillman) 435, in which it was held that where a wife had obtained a divorce from her husband and no provision was made in the decree for the custody and maintenance of the children who were with their father, the mother and former wife could afterward maintain an *independent bill in chancery* for the custody and support of the children. In that case Judge Caton, in delivering the opinion of the court said: "The power of the court of

chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction, is of very ancient origin, and cannot now be questioned.'' The court there quoted from 2 Story's Eq. Jur. sec. 1341, and continuing said:

''It becomes clear, then, that our legislature, by providing that 'when a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just,' has conferred no new authority or jurisdiction upon the court. It was by its original jurisdiction clothed with the same powers before. The cases provided for in this statute are necessarily embraced in that broad and comprehensive jurisdiction with which the court of chancery is vested, over the persons and estates of infants and their parents who are bound for their maintenance.'' See also *Darnell v. Darnell,* 212 Ill. App. 601 where the *Cowls* case is considered.

Mr. Justice Feinberg dissenting in part.

I cannot concur in that part of the majority opinion affirming the order allowing solicitors' fees to defend the appeal from the decree dismissing for want of equity the complaint for annulment filed by the husband. In my opinion, the contention made by plaintiff, that there is neither statutory authority nor general equity power to award the wife solicitiors' fees to defend this appeal, is sound and should be sustained. Once a final decree is entered in this kind of a proceeding, the court's jurisdiction ends, pending appeal, and can make no order for allowance of solicitors' fees to defend the appeal. The annulment proceeding is not under any statute.

It is fundamental in this State that the power to allow alimony in separate maintenance or divorce

exists by virtue of the statute and not under general equity powers. *Smith v. Smith,* 334 Ill. 370; *Jacobs v. Jacobs,* 328 Ill. App. 133; *Shaffer v. Shaffer,* 219 Ill. App. 200.

A court of equity has no general power to compel support of a wife, which is the husband's common law obligation. That is why the legislature, in enacting the divorce and separate maintenance statutes, provided for such support. The common law duty to support is still preserved when the action is not in divorce or separate maintenance by ch. 68, pars. 24, 26 and 28 of the Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 37.002, 37.004, 37.006].

It has been repeatedly held that the only power to allow solicitors' fees to defend an appeal involving the matrimonial relation is by virtue of par. 16, ch. 40, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 109.183]. *Jacobs v. Jacobs,* 328 Ill. App. 133; *Shaffer v. Shaffer,* 219 Ill. App. 200; *Balswic v. Balswic,* 179 Ill. App. 118; *Goodman v. Goodman,* 329 Ill. App. 444 (abst.).

If such a rule is to be applied in a divorce case, where the statute is silent, in the case of a wife defeated in the court below, with respect to the allowance of fees on an appeal, then, certainly, no rule more elastic in favor of the wife can be applied in an annulment proceeding. It has been many times held that with few exceptions solicitors' fees cannot be assessed against the unsuccessful party in the absence of a statute making provision for the allowance of such fees. *Royal Neighbors v. Chicago Title & Trust Co.,* 297 Ill. App. 80. I do not regard the instant case within any of the exceptions mentioned.

There is another cogent reason why the order allowing solicitors' fees after the decree was entered is erroneous. The decree before us on this appeal, providing for the dismissal of the defendant's cross-complaint for separate maintenance or, in the alternative, divorce, was a clear adjudication against her that she had no equitable standing or claim against

plaintiff. She did not appeal from this portion of the decree and is bound by it. It is certainly an anomaly for the court to adjudicate that she had no equitable claim or standing in court against the complainant and in the same breath allow her fees to defend an appeal not authorized by any statute.

Our own Supreme Court, it seems to me, has settled this question in *Jenkins v. Jenkins,* 91 Ill. 167. There, the wife obtained a decree for divorce, which provided for alimony and solicitors' fees. Defendant husband appealed. While the appeal was pending, the court made a further allowance of solicitors' fees for defending the appeal. One of the grounds relied upon for reversal as to the allowance for solicitors' fees was that the court had no jurisdiction to make the allowance after the cause had been removed to the Supreme Court, the very point which plaintiff makes here of the lack of jurisdiction of the court, after decree. In disposing of this contention, the Supreme Court said (p. 168):

"... *were it not for sec. 15, chap. 40, R. L. 1874, page 421, we would have no hesitation in holding that appellant's position was well taken,*—that after the appeal was consummated and the cause was removed to this court, the circuit court had no right to require appellant, by decree or othewise, to pay attorney or solicitor's fees; but the section of the statute referred to in plain and express terms confers the power upon the circuit court, and the law as enacted by the Legislature must control." (Italics mine.)

The majority opinion treats the language quoted in the *Jenkins* case as *obiter dictum.* In this connection it may be well to bear in mind what our Supreme Court said on the subject of *dictum* in *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462 at p. 470:

"We do not think the rule laid down in this last case upon the question here involved was *dictum,* but even

if it was, *it was the expression of opinion upon a point in a case deliberately passed upon by the court. . ."* (Italics mine.)

The challenge to the jurisdiction in the *Jenkins* case brought before the Supreme Court, and it deemed it necessary to determine the question whether, without such a statute, there could be any authority to make the allowance. Having rendered a deliberate expression of opinion upon this question, and not since overruled, we are in duty bound to follow the conclusion reached by the Supreme Court in the *Jenkins* case, notwithstanding *Smith v. Saum,* 324 Ill. App. ·299, seemingly to the contrary. I am convinced this court went too far in holding in *Smith v. Saum* that the court had authority to grant solicitors' fees, after decree, to defend an appeal in an annulment proceeding, relying upon *Hart v. Hart,* 198 Ill. App. 555, and that section 15 of the Divorce Act applied. The opinion in the *Hart* case discloses that the bill was for an annulment by the complainant, a minor; that there was no consummation of the marriage and no compliance with the statute with respect to marriage praying, the marriage should be annulled. The wife filed a cross-bill for separate maintenance, prayed for temporary alimony and solicitors' fees and upon a hearing of the motion for temporary alimony and solicitors' fees, an allowance was made, from which an appeal was taken on the ground that the court had no jurisdiction. There was no such question involved in the *Hart* case with respect to an allowance to defend an appeal. It was erroneously stated in *Smith v. Saum,* that this court, in *Hart v. Hart,* held that an allowance for fees to follow the appeal was proper, when a re-examination of the opinion in the *Hart* case discloses no such holding was declared.

The majority opinion relies strongly upon *A. R. Barnes & Co. v. Chicago Typographical Union,* 232 Ill. 402, to support the claim of jurisdiction of the court

in the instant case to make the allowance for fees. The question there involved was whether the chancellor, after granting a prohibitory injunction, and pending the appeal, had jurisdiction to punish for contempt, a violation of the injunction occurring pending the appeal. The *Barnes* case is not in point. By a rule of decision, supported by many textwriters, and not because of any statute existing in this State, it has been declared in many cases that a prohibitory injunction is not suspended by an appeal; that the very purpose of the injunction could be destroyed if a mere appeal would permit of its violation and continued violation pending an appeal, and thus allow a defendant to speculate upon the consequences of such a violation after the determination of the appeal. The prohibitory injunction cases are in a class which clearly is an exception to the general rule that, once a final decree is entered, an appeal from such decree suspends the jurisdiction of the court pending the appeal. This finds support in the language of the Supreme Court in the *Barnes* case at pages 408 and 409.

For the foregoing reasons, I believe the order allowing the fees to defend this appeal should be reversed.