## Charles Bloomer v. Alta I. Deen.

93    479
r191s 416

1. CONTEMPT—*Failure to Pay Alimony.*—When a party, through his pecuniary inability, not resulting from his fraudulent conduct to produce that condition, is unable to pay alimony decreed against him, he can not, on his failure to make such payment, be punished by imprisonment for contempt.

Proceedings for Contempt, for a failure to pay alimony. Appeal from the Circuit Court of Mercer County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1900. Reversed. Opinion filed February 13, 1901.

W. J. GRAHAM and R. J. GRIER, attorneys for appellant.

McARTHUR & COOKE and JAMES M. BROCK, attorneys for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

On December 8, 1893, Alta I. Bloomer, now Deen, the appellee, obtained a divorce from her husband, Charles Bloomer, the appellant, in the Circuit Court of Mercer County. The decree gave appellee the custody of their three children and ordered appellant to pay alimony at the rate of $40 a month, $85 solicitor's fee and the costs of suit. None of the payments provided for by the decree have ever been made, nor has any execution been issued therefor. Shortly after the rendition of the decree Bloomer left the State, and did not return until about January 3, 1900. On March 3, 1900, appellee, who some five months before that time had become the wife of William Deen, filed her petition in said court for an attachment against appellant for contempt of court in not paying the alimony provided for by said decree. The writ was issued April 3d, appellant taken into custody, and released upon a bond in the sum of $3,000. The case was heard upon affidavits, no oral testimony being offered. On May 2, 1900, the court found that appellant was in contempt of court for the reason that " being financially able, in whole or in part," he had willfully neglected to pay said alimony or any part thereof, and that there was due the sum of $3,284.17, which sum appellant was ordered to pay forthwith, or in default thereof be committed to the county jail, to be there confined until he made such payment, or was otherwise discharged by due process of law. From that order Charles Bloomer appeals to this court.

Appellant, in his affidavit filed in support of his motion to vacate the rule for an attachment, states that at the time the divorce was granted he had no real estate; that shortly prior thereto he had sold his personal property and paid the proceeds thereof upon his debts, but that the same was insufficient to pay all of his debts; that owing to a physical disability, resulting from an injury to his left ankle, he decided to go West to find some employment other than farming; that he had no money, but borrowed $60 of a bank, with his father, James Bloomer, as surety, to pay his

Bloomer v. Deen.

expenses; that he first went to Manhattan, Kansas, where an uncle resided, and where he remained four months, taking a course in bookkeeping in a business college, his father paying his expenses; that after working at several places in Kansas he went to Iowa, where he received an injury which necessitated a surgical operation, and that he has never since enjoyed good health; that he afterward went to Denver, Colorado, to get the benefit of the climate for his health, and after arriving there, was obliged to send to his father for money to pay for medical treatment; that he was obliged to borrow money from his father after he got home to pay debts left in Denver, and that his health is now such that he can not work at hard physical labor; that he has applied to his father for money to pay the decree but the latter refused to advance the same and that he knows of no one to apply to for funds to pay the same; that he was during all of his absence informed that his father, under an arrangement made by affiant with him, was giving said children all the care and attention they required. It further appears from the affidavit that during his absence appellant labored in a foundry, a commission house, a notion store, on a farm, at cooking on a ranch, at herding cattle, in a soap factory, in a clothing house, as a detective, as a teamster, a street car conductor, in a grocery store and a railroad office; that he did not drink intoxicants, use tobacco or gamble; that he suffered from physical infirmities and on a number of occasions had to call on his father for financial aid. The affidavit of the father, James Bloomer, was also filed showing that appellant had no money at the time he went away and that affiant had to furnish him means from time to time; that appellant was unable to work at physical labor and has not been able to secure employment since his return; that affiant took the children and kept them for a short time on one occasion; that he frequently gave appellee money to purchase clothing for herself and the children; that he often told her if she would let the children remain at his house he would educate, clothe and care for them, and at their majority, give them each $500, but that

she refused to do so. Appellant also filed the affidavit of a physician, who stated that he treated appellant for an injury to his ankle in 1886, and that in opinion of affiant, the effect of that injury was such that appellant could not "at this time without serious inconvenience to himself, engage in any manual labor that would cause him to stand upon his feet for an extended period of time." Appellee, by her affidavit, stated that she had supported herself and her children, receiving nothing from appellant since the divorce; she denied that appellant had any such physical disability as had heretofore or would now prevent him from working on a farm; that since she married her present husband she has lived with him and that she has the youngest of said children with her, the other two having obtained homes with other persons; that appellant has repeatedly told her she should get nothing from him. She also filed with her affidavit, several rather irritating letters written by appellant to her, and the affidavits of several persons to the effect that appellant had said he never intended to pay her anything and that he had made money but could not save it. She makes no attempt to deny the statements of appellant concerning the money he has earned, or his ability, past or present, to pay alimony. Upon an examination of the evidence contained in the affidavits, we do not find that appellant has at any time since the decree, been in a position to pay the alimony due. At no time during his absence, although he was so often employed, did he receive $40 in any one month. It has apparently been an absolute impossibility for him to pay the amount, which, considering the circumstances, was a very large one, taxed against him, and he certainly is not now able to pay any part of it.

Where one, through pecuniary inability, not resulting from his fraudulent conduct to produce that condition, is unable to pay alimony decreed against him, he can not, on his failure to make such payment, be punished by imprisonment for contempt. O'Callaghan v. O'Callaghan, 69 Ill. 552; Kadlowsky v. Kadlowsky, 63 Ill. App. 292.

We are of opinion that while the proof shows that appel-

lant was not provident or thrifty, yet it does not show that his inability to pay the alimony resulted from any desire on his part to produce that condition. The case made, therefore, does not, for the reason stated, justify the imprisonment of appellant, and it is unnecessary for us to consider other questions raised by him.

The order of the court below is accordingly reversed.