Lee Shapiro, Plaintiff, Counterdefendant-Appellee, v. Irving Shapiro, Defendant, Counterplaintiff-Appellant.

Gen. Nos. 52,797, 52,826. (Consolidated.)

First District, Fourth Division.

August 6, 1969.

Jerome Berkson, of Chicago, for appellant.

Rinella and Rinella, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

These appeals were taken by defendant from orders which were entered to enforce the support provisions of a separate maintenance decree. A recitation of the earlier proceedings is necessary to an understanding of the issues now before us.

On September 22, 1966, after a trial by jury, the court entered a decree for separate maintenance which ordered defendant to pay plaintiff permanent support of $750 per month, retroactive to January 11, 1962, amounting to $13,251.70. The decree also found that real estate located at 3168 and 3170 W. Monroe, Chicago, was held jointly by plaintiff and defendant, and should be sold, with the proceeds to be divided equally between the parties after payment of certain expenses. The court expressly retained jurisdiction to enter such further orders as equity might require. Defendant sought review of this judgment in appeal No. 51,903.

Plaintiff then filed a petition on November 9, 1966, for the issuance of a rule on defendant to show cause why he should not be held in contempt for failure to make the payments required by the separate maintenance decree. Plaintiff also asked for attorneys' fees and costs.

A hearing on December 30, 1966, resulted in the entry by the court of three orders: (1) defendant was ordered to pay plaintiff $10,000 for attorneys' fees and other

costs in defense of appeal No. 51,903; (2) judgment was entered against defendant in the amount of $14,776.70 covering defendant's default in support payments to plaintiff through October 22, 1966, with execution to issue; and (3) a rule was issued against defendant to show cause why he should not be held in contempt for failure to pay the $14,776.70. The rule was made returnable January 31, 1967. Defendant's motions to vacate these orders were denied on February 9, 1967, and the hearing on the rule to show cause was continued. Defendant also sought review of these orders in appeal No. 52,198.

The two appeals (Nos. 51,903 and 52,198) were consolidated by order of another division of this court and were later dismissed on November 13, 1967, on the plaintiff's motion. Defendant's motion to vacate the dismissal was denied on November 28, 1967. Defendant then filed a petition for leave to appeal in the Illinois Supreme Court, but the petition was denied on March 27, 1968 (39 Ill2d; No. 41,141). On October 14, 1968, certiorari was denied by the United States Supreme Court. 37 USLW 3134 (US Oct 15, 1968).

The consolidated appeal now before this court arises from two subsequent orders of the trial court. On October 18, 1967, the first of the two orders was entered when the court, acting on its own motion (after being advised that the building at 3170 W. Monroe, which the separate maintenance decree had ordered to be sold, had been destroyed by fire), directed that the net insurance proceeds, amounting to $13,641.04, after expenses and various other deductions, be divided equally between plaintiff and defendant as joint tenants. The $6,820.52 to be awarded defendant, however, was applied to the $14,776.70 arrearage found due in the December 30, 1966 judgment order. Defendant, therefore, was given a credit of $6,820.52, leaving a balance in arrears due plaintiff of $7,956.18. Further, defendant was ordered to resume support payments to plaintiff of $750 per month, as re-

quired by the decree for separate maintenance, and was directed to pay "a substantial sum" on the $7,956.18 arrearage by November 21, 1967. Also, plaintiff was directed to file a statement of receipts and disbursements in connection with her operation of the premises at 3170 W. Monroe. The hearing on the rule to show cause was again continued. From this order defendant appealed, and that appeal is now before us as cause No. 52,826.

On January 8, 1968, the court conducted a hearing on the return of the rule to show cause. At its conclusion, the court ordered defendant committed, in contempt, to the County Jail for six months or until payment of the $7,956.18 arrearage. Defendant's appeal from this order as cause No. 52,797 is also now before us, consolidated with No. 52,826.

■ ■ Defendant contends that the trial court was without jurisdiction to adjudicate the property rights of the parties in the separate maintenance action. Separate maintenance is a remedy in equity, created by statute, whereby one spouse who, without fault, lives apart from the other, may receive reasonable support and maintenance while living apart. Ill Rev Stats (1967), c 68, § 22 et seq. The process, practice, and proceedings in actions to obtain separate maintenance are the same as those in divorce actions (Ill Rev Stats (1967), c 40, § 1 et seq.). Ill Rev Stats (1967), c 68, § 23.2. Thus, unless otherwise specifically provided, separate maintenance actions are governed by the same principles as are other civil cases. Ill Rev Stats (1967), c 40, § 7.

■ ■ This court must decide this jurisdictional question raised by defendant in spite of the fact that the original consolidated appeals (Nos. 51,903 and 52,198) were dismissed. While res judicata will apply to all decisions that have been properly disposed of on appeal, jurisdictional issues persist and may be raised at any time. As stated in Forsberg v. Harris, 27 Ill App2d 159, at pages 171–172, 169 NE2d 388:

379

"One of the essentials of a valid judgment is that the court have jurisdiction to render that particular judgment. . . ." [quoting from Armstrong v. Obucino, 300 Ill 140]. Nor does the fact that the court has found that it has jurisdiction add anything to its authority, since where the court has exceeded its power to act in the particular cause before it, its finding that it had the power so to act adds nothing to its authority since such finding itself is devoid of authority.

We are concerned in the instant case with the court's jurisdiction to order (as it did in the decree for separate maintenance), that certain property, found to be owned jointly by plaintiff and defendant, be sold, and the proceeds divided equally between them.

■ Generally, courts have no power to adjudicate property rights in a separate maintenance action. E. g., Olmsted v. Olmsted, 332 Ill App 454, 75 NE2d 774. The separate maintenance statute does not authorize the court to adjudicate property rights, and, further, the courts have, as a general rule, held that in separate maintenance proceedings this power does not exist independent of the statute. Loss v. Loss, 80 Ill App2d 376, 385, 224 NE2d 271. However, adjudication of property rights in separate maintenance actions has been held valid in certain situations. In Glennon v. Glennon, 299 Ill App 13, 19 NE2d 412, the court said that it would liberally construe the provisions of the Civil Practice Act to permit a property adjudication in a suit for separate maintenance. This decision was impliedly overruled in Petta v. Petta, 321 Ill App 512, 53 NE2d 324. In that case no pleadings had asked for such a determination but the court stated that if the parties had submitted their property rights for determination, a different question would have been presented.

■■ There have been other situations in which property adjudications have been upheld. Where both parties

380

■■■■■■■■■■■■

asked for adjudication of property rights and introduced evidence in regard thereto, the court was held to have acted within its power in adjudicating these rights. Decker v. Decker, 279 Ill 300, 116 NE 688. Also, since a wife has the right to her separate property and may not be precluded from asserting this right in an appropriate action, it has been held that she might properly join an action at law for her property as a separate count in a separate maintenance suit. Boker v. Boker, 17 Ill App2d 260, 149 NE2d 774.

In the instant case, after plaintiff filed her suit for separate maintenance, defendant filed a counterclaim for divorce. When the court entered the separate maintenance decree in favor of plaintiff, it found that defendant had failed to prove his case for divorce. However, in asking the court to grant him a divorce decree, defendant had specifically submitted his property rights to the court for determination.

In Ribergaard v. Ribergaard, 349 Ill App 99, 110 NE2d 89, there was a complaint for separate maintenance alleging joint tenancy of certain real estate, and asking that the rights of the parties be adjudicated. Defendant's answer did not affirmatively request a property determination, but conceded the joint tenancy of record, and claimed that the property had been owned by him prior to the marriage. The court construed this response in the following manner at page 106:

> In the present case the defendant not only introduced evidence in regard to the rights of the parties to the property, but asked for it in his answer. It is our conclusion that the court properly adjudicated the rights of the parties, . . . .

Plaintiff in the present case had originally filed the complaint for separate maintenance without mention of property adjudication. However, while the amended and supplemental counterclaim for divorce was pending, she

submitted to all inquiries required to determine rights in the disputed property, without objection to the court's jurisdiction.

Furthermore, the defendant, on September 22, 1966, filed a document entitled, "Objections to Proposed Decree for Separate Maintenance" in part II(c) of which he recognized that the property rights issues had been joined and submitted to the court. Fairly construed, this document constitutes an objection by defendant to the court's findings but not to its jurisdiction. Plaintiff filed an answer to defendant's objections, in which she, too, recognized the court's jurisdiction to determine her property rights. Thus, in effect, both parties conceded that they had submitted their property rights to the court.

In Boyd v. Boyd, 58 Ill App2d 1, 11, 12, 207 NE2d 350, the court decided a similar question in the same manner. There, the original complaint by plaintiff was for divorce, and prayed for a property rights determination. Defendant's counterclaim for separate maintenance prayed that an equitable award be made of the property of the parties. The court dismissed the divorce action, decreed separate maintenance, and determined the parties' property rights. It reasoned that since the plaintiff had submitted the issue of determination of property rights to the court in the divorce action and had joined this issue with defendant, he could not then be heard to attack the jurisdiction of the court. In the instant case, too, when consideration is given to all of the acts of the parties throughout the litigation, there was a joining of the issue sufficient to sustain the court's jurisdiction.

Defendant also contends that upon the filing of his notice of appeal from the decree of separate maintenance, the jurisdiction of the Appellate Court attached, and the trial court lost jurisdiction to enforce its decree. Defendant claims that, as a result, the orders emanating from the rule to show cause are void. Once again, though

the original appeal from the decree was dismissed, the claim of a jurisdictional defect requires answer on this appeal.

■■ Defendant's contention is based on the general rule that once an appeal has been duly perfected to this court, the trial court is divested of further jurisdiction of the cause. Arndt v. Arndt, 331 Ill App 85, 93, 72 NE2d 718 (revd on other grounds, 399 Ill 490, 78 NE2d 272). Thus, the trial court is restrained from entering any order which would change or modify the judgment or its scope, and from entering any order which would have the effect of interfering with the review of the judgment. Lind v. Spannuth, 8 Ill App2d 442, 453, 131 NE2d 796 (Judge Feinberg specially concurring). See Holmes v. Kammerman, 10 Ill App2d 450, 457, 135 NE2d 162. The trial court, however, retains jurisdiction to hear and determine matters arising independent of, and collateral to, the proceeding which resulted in the judgment on appeal. Arndt v. Arndt, supra. See, generally, Karasik, "Jurisdiction of Trial Court after Notice of Appeal," 53 IBJ 30. The trial court, in the case before us, had the jurisdiction to enter the post-decree orders of December 30, 1966, and October 18, 1967, as it had expressly retained jurisdiction to enforce the decree as equity might require, and the orders in question did not affect the substantive issues on appeal, nor in any way alter the nature of the appeal. (See Ill Rev Stats (1965), c 40, §§ 16 and 19 and c 22, § 42.) The proceeding on rule to show cause was properly designed to enforce the decree, which the court had full authority to do in the absence of supersedeas. If defendant had sought and obtained an order making the appeal a supersedeas, the situation would have been otherwise, but this he did not do.

Looking past the question of the court's jurisdiction to enter the two orders here appealed from, we must bear in mind that the issues litigated in the original consolidat-

ed appeal (Nos. 51,903 and 52,198)—particularly those decided by the decree of separate maintenance—cannot now be collaterally attacked in this action.

We shall consider first the order of October 18, 1967, in which the court, on its own motion, declared that the fire loss insurance proceeds from the property located at 3170 W. Monroe should be divided equally between the parties, with defendant's share to be retained by plaintiff and applied to the arrearage in defendant's maintenance payments under the decree. Defendant contends, on several grounds, that the court abused its discretion in ordering this distribution.

 Defendant objects to this insurance-proceeds distribution because plaintiff had not requested such relief in her complaint or other pleading. On December 30, 1966, the court had reduced to judgment defendant's arrearage in maintenance payments in the amount of $14,776.70 and directed that execution issue therefor. Since defendant's appeal from this order was dismissed, the judgment, as well as the decree on which it was based, is unimpeachable in the instant proceedings. Under the standing unexecuted decree of separate maintenance, the authority of section 42 of the Chancery Act is brought to bear. Ill Rev Stats (1965), c 22, § 42. That section provides that a court may enforce its decrees by sequestration of either real or personal property and delivery of such property to the creditor-litigant, by body attachment, fine, imprisonment, and, in general, "by the exercise of such powers as pertain to courts of chancery, and which may be necessary for the attainment of justice." With this broad power of enforcement available as its tool, the court had both parties before it in a civil contempt proceeding, the purpose of which was to compel defendant to pay the amount due unless he could establish his inability to pay. Certain funds were to issue from sale of the building at 3170 W. Monroe, but, since this had become impossible because of a fire, the insurance proceeds were substituted. The remaining property at

3168 W. Monroe and the land at 3170 W. Monroe were still intact and subject to be sold pursuant to the decree. With the outstanding order and the insurance proceeds brought before it, then, the trial court, under its general enforcement power, could and did, on its own motion, properly distribute the entire amount to plaintiff, crediting defendant with half.

Nor is this relief invalidated, as argued by defendant, because plaintiff failed to submit a full accounting of rents received from her prior management of the destroyed property. The hearings on the distribution of the insurance proceeds began on September 25, 1967. Plaintiff testified that, after the decree, she had collected rents on the property at 3168 W. Monroe, and the court directed that on the following day she be prepared to make an accounting of all that she had received and spent in regard to that property. On September 26, she testified that she could remember neither the number of tenants she had at 3170 W. Monroe nor the income she had received from that building during the period from the date of the decree (September 22, 1966) to the date of the fire (November 28, 1966). The court admonished, "I told you yesterday to be ready to answer these questions," to which she replied that she thought the court had referred to 3168 W. Monroe. As to the latter property, however, she stated that she had received income from September 22, 1966, to the date of the hearing, but she could not remember what it was, although the bookkeeper had records which she could get. The court ordered that she file a sworn statement within ten days showing how much post-decree income she had collected from both properties and what she had done with it. The next hearing was held on October 10, 1967, at 11:00 a. m. The plaintiff arrived without the sworn statement which had been ordered, so the court recessed the hearing until 2:00 p. m., with direction to prepare the sworn statement and return. Plaintiff subscribed to two affidavits

385

on that day, one stating the rental income (without itemization) and disbursements in connection with both buildings in question, and the other stating her receipts and disbursements as to the insurance proceeds received from the destruction of the building at 3170 W. Monroe. Both affidavits were filed on October 11, and the hearing was continued until October 17, 1967. At that hearing, plaintiff appeared with records of expenditures, bills, and checks for the subject properties, and she was subjected to extensive examination and cross-examination. She stated that she did not have accurate records of rentals received or tenants in the properties, and the court, by order entered October 18, again directed her to file a verified statement of all receipts and expenditures, apparently not being satisfied with the unitemized accounting for rentals. There is no evidence in the record that plaintiff ever satisfactorily complied with this order. Therefore, we remand this portion of the case to the trial court for the narrow purpose of requiring plaintiff to comply fully with the accounting which she had been ordered to render as to both properties. If the trial court should find that a net profit had been derived from the properties, then one-half thereof would be credited to defendant's outstanding arrearage as computed by the court in the orders now on appeal. If the amount of the credit should exceed the arrearage, then, of course, defendant would not be in contempt, and the balance should be paid to defendant or credited against additional arrearages, if any, which the court might then determine to exist.

Finally, defendant claims that the court erroneously entered both the order of October 18, 1967 (requiring him to pay an arrearage of $7,956.18) and the order of January 8, 1968 (committing defendant to jail in contempt), because both orders failed to give appropriate weight to defendant's evidence relating to his inability to pay. Since the appeals from the separate

386

maintenance decree and from the order of December 30, 1966, were both dismissed, this court cannot now consider modification of the amounts due under those orders, both of which can serve as the basis for subsequent enforcement proceedings. The order of October 18, 1967, was entered after a hearing on September 25, 1967, conducted for the purpose of determining defendant's financial status and ability to make a substantial payment on account of his support delinquency. We believe that defendant, on this occasion, was given adequate opportunity to present evidence to meet the burden of proof which, under these circumstances, rested on him. Viewed somewhat differently, this order did not alter defendant's support obligation; rather, it merely made a current reckoning of his account. The original decree had ordered him to pay this money, and this directive remained fully effective at the time of the October 18 order. The primary effect of that order was the allocation of the insurance funds and the application of defendant's share thereof to his arrearage. The part of the order which directed him to make a substantial payment on the arrears added nothing to his monetary obligation.

Defendant also argues that the hearing on January 8, 1968, should have dealt solely with his ability, at that date, to pay the sums due, and not his ability to pay at any prior time, such as the date of the separate maintenance decree. He cites Barton v. Barton, 323 Ill App 357, 55 NE2d 542, which we do not consider in point, since it relates to the fixing of fees and expenses a year after entry of a decree for separate maintenance. In the present case, the court heard evidence of defendant's financial condition at numerous hearings preceding the separate maintenance decree on September 22, 1966, the order of December 30, 1966, the order of October 18, 1967, and the contempt order of January 8, 1968. The testimony of defendant at all of these hearings, so far as we can detect, did not disclose any deterioration in his financial

condition. Defendant's testimony at the hearing on January 8, 1968, covers 48 pages of record. Although the order to be enforced dated as far back as September, 1966, the evidence on which the court based its final order of January 8, 1968, related to the entire intervening period.

■■■■ A contempt proceeding for nonpayment of alimony or support deals with the defendant's ability to pay a fixed legal obligation over the period in question. It is not concerned with the plaintiff's ability to contribute to her own support. Shaffner v. Shaffner, 212 Ill 492, 72 NE 447; Barclay v. Barclay, 184 Ill 471, 56 NE 821; Hengen v. Hengen, 271 Ill 278, 111 NE 121; Shuff v. Fulte, 344 Ill App 157, 100 NE2d 502; White v. Adolph, 305 Ill App 76, 26 NE2d 993. The power of the court to enforce its decree by imprisonment for contempt, is limited to willful and contumacious refusal to obey its order. "It is not a contempt of court to fail to pay money which one neither has nor can obtain and which he has not causelessly either put out of his hands or failed to receive." White v. Adolph, supra, page 79; Shuff v. Fulte, supra. The failure of a defendant to make alimony or support payments pursuant to a decree is prima facie evidence of contempt. It then becomes incumbent upon the defendant to establish, to the satisfaction of the court, that his failure was due entirely to his inability to pay. Shaffner v. Shaffner, supra; Hengen v. Hengen, supra; Deen v. Bloomer, 191 Ill 416, 61 NE 131 (reversing Bloomer v. Deen, 93 Ill App 479); Boyden v. Boyden, 162 Ill App 77.

■■■■ Defendant introduced evidence on January 8, 1968, which he considered was proof of his inability to pay, and relied substantially on the partial monthly payments which he had made for the previous six months. He asserted that full payment had not been intentionally withheld, but that he did not have the necessary money or assets to keep current. Through vigorous cross-

examination, however, it was disclosed that defendant had been dealing with large sums of money which plaintiff claimed she had shown were available for her support, and which defendant claimed were necessary for his own support and for the continuation of his business. There was thus involved a discrepancy in the testimony which is essentially a matter for the trial court. We do not believe the chancellor abused his discretion in deciding that defendant's failure to pay was willful and contumacious.

The order of October 18, 1967 (Appeal No. 52,826) is affirmed.

The order of January 8, 1968 (Appeal No. 52,797) is vacated and the cause remanded for the sole purpose of redetermining the payment required of defendant in order to purge himself of the contempt. To that end, the plaintiff should be required to file under oath a full and detailed accounting of her management of the real properties at 3168 and 3170 W. Monroe Street covering the period from the date of the decree (September 22, 1966) to the date of the contempt order (January 8, 1968). Thereupon, the court shall conduct such further proceedings and enter such other orders as may not be inconsistent with the views expressed in this opinion.

Affirmed in part, remanded in part, with directions.

McCORMICK, P. J. and DRUCKER, J., concur.