DOROTHY J. STORM, Plaintiff-Appellee, v. RICHARD D. STORM, Defendant-Appellant.

(No. 56934; ▮▮▮▮▮▮)

First District—January 31, 1973.

*Rehearing denied February 27, 1973.*

Joe Reiff, of Chicago, for appellant.

Bernard McDevitt, of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Richard D. Storm, appeals from an order entered on October 22, 1971, finding him guilty of willful contempt of court for failing to pay $3,320 arrearage of support of his children as provided in the divorce decree and from an order of commitment of said date. Plaintiff and defendant were divorced on January 26, 1968, by a decree which provided in part:

> "c. That the defendant pay to plaintiff the sum of $60.00 per week for the support and education of the four minor children of the parties  *   *   *."

Plaintiff waived alimony.

On June 8, 1970, an agreed order was entered that "the defendant, Richard D. Storm, is now in arrears in his support payments for the minor children of the parties in the sum of $2,130.00" and defendant was to pay plaintiff $50.00 per month on the arrearage "in addition to regular weekly payments."

On October 1, 1971, plaintiff filed a petition that a rule be entered against defendant requiring him to show cause why he should not be held in contempt. Plaintiff alleged and it is undisputed, that following the June 8, 1970, order "defendant paid to plaintiff only $60.00 per week until October 10, 1970" and then nothing, so the arrearage then amounted to $3,020.00 (50⅓ weeks times $60.00 a week) for the period of October 10, 1970, to October 1, 1971, plus the arrearage of $2,130 from June 8, 1970, on which defendant paid nothing.

Defendant answered that on June 8, 1970, he "was not represented by counsel, did not understand the law and the said amount includes $15.00 per week" for Barbara Storm, defendant's daughter, who became 18 on December 23, 1968. Defendant petitioned the court to correct the June 8, 1970, order accordingly and alleged he had paid $940.00 from June 8, to November 14, 1970.

The trial court, in an order entered October 22, 1971, found defendant in contempt; denied the "correction" of the June 8 order because that order did not disclose whether the figure includes $15.00 per week since December 22, 1968, the date on which Barbara was 18 years of age; found that Barbara was steadily employed before and after December 22, 1968; suspended child support payments as to Barbara and Richard Storm as of June 8, 1970; ordered defendant to pay $30.00 a week for child support; found $3,320.00 "presently due and owing for all past support payments"; set an appeal bond of $6,600.00; and found "that defendant has made no support payments since November 14, 1970."

The court also signed an "order of Commitment" 'on October 22, 1971, which stated:

> "After a hearing on a rule to show cause, it is found that Respondent, Richard D. Storm, is guilty of willful contempt for willfully failing and refusing to pay child support to plaintiff Dorothy Storm in the amount of his arrearage in payment due from him of $3,320.00."

The issue on appeal is twofold: (1) Whether the court correctly computed the arrearage at $3,320.00 as of October 22, 1971; and (2) Whether the court properly found defendant in contempt of court.

The court computed the arrearage as of October 22, 1971, at $3,320.00; $2,130.00 as agreed on in the June 8, 1970, order, plus $2,130.00 (arrived at by multiplying 71 weeks by $30.00, the reduced child support payment

ordered reduced retroactively on October 22, 1971), minus the $940.00 paid by defendant.

■■ There is no merit in defendant's contention that the June 8 order should be set aside because defendant was not represented by counsel. There is no such requirement in the law, and defendant cites no authority to support his argument.

The essence of defendant's argument on the arrearage is that the decree "automatically" reformed itself as each child reached the age of 18. *Wilson v. Wilson,* 122 Ill.App.2d 142, 257 N.E.2d 810, involved construction of the meaning of the word "minor children" in a divorce decree which did not specifically define the duration of the obligation, since the husband stopped paying child support when each son reached 18 years of age. The court held: "[M]ales become of age when they are 21 and females become of age when they are 18 years of age." However, defendant was allowed a set-off for payments made by him to or for the benefit of his sons and for the periods during which they earned significant sums in employment, as was done in the instant case by the order of October 21, 1971, when defendant was credited with payment of $940.00 and when the trial court took into account—in the defendant's favor—the fact that the eldest son and daughter had been gainfully employed. In *Gregory v. Gregory,* 52 Ill.App.2d 262, 202 N.E.2d 139, the decree contained a provision for the support of two children, "$100 a month to continue until the coming of age or emancipation of either of said children, then $50 until the emanicipation of the remaining child." Past due support was reduced by the trial court from $6,465.00 to $900.00. On appeal, child support was held to be a vested right and the mother entitled to interest, at the rate of 5% per annum. *Anderson v. Anderson,* 48 Ill.App.2d 140, 198 N.E.2d 342, is in accord, but notes that a trial court can give effect to agreements between the parties themselves, such as the order entered on stipulation on June 8, 1970.

■■ Unlike the terms of the decree in *Gregory v. Gregory,* 52 Ill.App. 2d 262, 202 N.E.2d 139, the decree in this case did not specify that a particular amount was for each child; it was for all four children collectively and cannot be held to be automatically reduced *pro rata* as each child reached his majority. The court can take "judicial notice" that circumstances change, that because of inflation, among other things, a hearing on the $60.00 amount might have resulted in either a reduction, an addition or in no change at all. It was up to the defendant to seek modification before the right to child support became vested; this he not only chose not to do, he even agreed to an earlier computation as being correct. The trial court correctly computed the arrearage to be $3,320.00.

■■ Defendant argues that he was not in contempt of court; more spe-

cifically, that the "body of the petition upon which he was cited for contempt did not recite that he was able to pay or that he willfully refused to comply with the support provisions of the decree". However, the record shows the court found defendant "guilty of willful contempt for willfully failing and refusing to pay child support to plaintiff". Defendant did not testify or present any evidence in defense of his position in the court below; and this court has held that "every reasonable intendment not negatived by the record will be indulged in support of the judgment, order or decree." *O'Berry v. O'Berry*, 36 Ill.App.2d 163, 166, 183 N.E.2d 539.

In support of his position, defendant relies upon *Wick v. Wick*, 19 Ill. 2d 457, 167 N.E.2d 207. On March 5, 1957, Mrs. Wick was granted a divorce and custody of two minor children, the decree providing $100.00 per month child support, the right to defendant to visit the children at all reasonable times and to have temporary custody at his home for periods of not more than one day at reasonable intervals, and that "the defendant shall not remove the said children from the County of Madison in the State of Illinois and shall rear the said children as communicants of the Roman Catholic faith, provided, however, for the next three months plaintiff may take said children from said state and county and thereafter for reasonable periods of time." One month after the decree, the mother took the children to the State of Michigan; subsequently, the father sought modification of the decree to give him custody (341 Ill.App. 478), and discontinued support after three months, and instead made deposits in bank accounts to the credit of himself and the children as joint tenants approximating the amounts which had accrued under the original decree ($5,250.43 for each daughter). Mrs. Wick sought to enforce the child support provision of the decree. The court held that one adjudged in contempt cannot prosecute in the same action: "The mother is not free to take matters in her own hands and establish a residence in some other state, thus depriving the father of visitation rights and placing herself and the children where they cannot be reached with process. *Trimble v. Trimble*, 16 Ill.App.2d 408." The court reasoned that in view of the wife's departure from the State in violation of the decree, his conduct was not a contempt of court. In regard to the father, Mr. Wick, the court observed: "[O]n the entire record, it is evident that he is not indifferent to his duties as a parent." No such case is made for Mr. Storm here.

■■ It is undisputed that for nearly a year preceding the contempt finding, from November 14, 1970 to October 22, 1971, Mr. Storm "made no support payments." In a long line of cases, the Illinois courts have held that failure to pay alimony or child support is *prima facie* evidence of

contempt. Thus, in *Roback v. Roback*, 59 Ill.App.2d 222, 207 N.E.2d 130, the court said: "The defendant has not shown that his failure to pay was due to his inability to do so. The failure to pay is *prima facie* evidence of contempt. *Shaffner v. Shaffner*, 212 Ill. 492, 72 N.E. 447."

In *Shaffner*, the divorced husband, an attorney, was $1,200.00 in arrears on an $80.00 per month alimony obligation and had paid nothing from June of the previous year to February of 1902, when he was found in contempt. Mr. Shaffner had testified in some detail in the court below about his inability to pay, that he owned no real estate, that he had numerous debts totalling $7,000 and judgments of $3,500, and an invalid brother whom he supported. The Supreme Court, on appeal, affirmed the contempt order because the showing made by the husband was insufficient, in that it was "too general" about his earnings between June and February and that he was actively engaged in the practice of law but kept no books. The court there set out the principles governing a contempt action, saying (p. 496):

> "He who seeks to establish the fact that his failure to pay is the result of lack of funds must show with reasonable certainty the amount of money he has received. He must then show that money has been disbursed in paying obligations and expenses which, under the law, he should pay before he makes any payment on the decree for alimony. It is proper that he first pay his bare living expenses; but whenever he has any money in his possession that belongs to him and which is not absolutely needed by him for the purpose of obtaining the mere necessaries of life, it is his duty to make a payment on the decree. We are not satisfied that he has pursued this course."

■■ However, this court has also held: "It is not a contempt of court to fail to pay money which one neither has nor can obtain, which he has not causelessly either put out of his hands or failed to receive" (*White v. Adolph*, 305 Ill.App. 76, 79, 26 N.E.2d 993), and has remanded for further specific hearings. And where a former husband was unable to pay because of a lack of funds "not resulting from his fraudulent conduct to produce that condition" he could not be imprisoned for contempt where there was uncontroverted evidence, including the affidavit of a physician, that the husband suffered from a physical disability and could not work if he had to stand on his feet for long periods of time. (*Bloomer v. Deen*, 93 Ill.App. 479.) Even where non-payment is undisputed, however, this makes out only a *prima facie* case; *Cole v. Cole*, 85 Ill.App.2d 105, 112-113, 229 N.E.2d 293, holds that defendant should be allowed to show he has a defense:

"The burden then is on the husband to show that he had a valid excuse for non-payment. * * * It is not enough * * * to find that the defendant is in arrears. Mere absence of compliance with the provisions of the decree is not sufficient basis for a judgment of contempt of court unless the evidence shows the failure to comply was a willful and contumacious refusal to obey the court order. *Mesirow v. Mesirow*, 346 Ill. 219, 178 N.E. 411."

In *Cole v. Cole*, 85 Ill.App.2d 105, 112, 229 N.E.2d 293, a finding of contempt was reversed and remanded where the arrearages for child support began "after plaintiff voluntarily relinquished custody of two children and stated in a letter to defendant that she would retain custody of the two younger children 'including their support which you may cease to pay,'" and the court stated "the defense to the contempt charge should in our opinion, be thoroughly heard and considered." *id.* at p. 113.

■■ The test is whether the defendant has established "to the satisfaction of the court that his failure was due entirely to his inability to pay" (*Shapiro v. Shapiro*, 113 Ill.App.2d 374, 252 N.E.2d 93), and where a defendant "asserted that full payment had not been intentionally withheld, but that he did not have the necessary money or assets to keep current", but cross-examination revealed that defendant "had been dealing with large sums of money which plaintiff claimed she had shown were available for her support and which defendant claimed were necessary for his own support and for the continuance of his business", the reviewing court held this was "a discrepancy in the testimony which is essentially a matter for the trial court." *id.*, 388-389.

■■ The record shows that Richard Storm had adequate opportunity to present his defense to the rule to show cause. It is undisputed that he made no payment for nearly a year; that he claimed he had earned only $600 during this time, yet he made $72 per day as a roofing chauffeur when he worked. He worked nine days in 1971 and one month in 1970.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.