THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BRADLEY HARRIS, Defendant-Appellant.

Fourth District    No. 13183

Opinion filed September 9, 1976.

TRAPP, P. J., dissenting.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (G. Michael Prall and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, Bradley Harris, appeals from an order finding him in contempt of court and sentencing him to 20 days' imprisonment in the Adams County jail.

On May 8, 1974, defendant entered a negotiated plea of guilty to a charge of theft of property having a value less than $150. He was ordered to pay a fine of $500, court costs, and $248.75 as restitution. Monthly payments of $50 were to begin June 1, 1974. On February 21, 1975, a rule to show cause was issued ordering defendant to show cause why he should not be held in contempt of court for failure to pay the fine, costs and restitution as ordered. On March 19, 1975, a contempt hearing was conducted. No report of the contempt proceedings has been filed. The trial court filed a memorandum stating the reasons for its decision, from which we have discerned the following facts.

At the time defendant was sentenced, May 8, 1974, he was a United States marine. He had gone a.w.o.l. prior to the sentencing hearing of May 8, 1974, and upon his return to his base camp, he was placed on "no-pay status." As a result, he was paid $30 per month. At that time, his wife received $75 per month as a dependent. A second a.w.o.l. by defendant resulted in his undesirable discharge from the Marine Corps on September 24, 1974.

Defendant returned to Quincy, Illinois, and was unemployed until November 1, 1974. Between September 24, 1974, and November 1, 1974, defendant made two or three attempts to procure employment. Defendant was employed the entire month of November, earning about $216, which was used for rent, groceries, and other household items. On December 1, 1974, defendant was fired for failure to notify his employer that he would not be at work as scheduled. On or about January 15, 1975, defendant obtained other employment from which he earned a take-home pay of between $125 and $135 per week. The trial court found that these earnings were used for bills and expenses. After one month, defendant was fired from this job for failure to advise his employer that he would not be reporting to work as scheduled. The trial court's memorandum states that defendant suffers from chronic acute laryngitis and he had a medical reason for not appearing for work.

Defendant remained unemployed from February 15, 1975, to March 19, 1975, the date of the contempt hearing. He stated that he had "looked three or four places for work" during that period. Most of his time, however, was spent sitting around the house taking care of his three-month pregnant wife, who was in good health.

Between defendant's sentencing hearing and February 7, 1975, defendant made no payments. On the latter date, defendant paid $50; on February 25, 1975, defendant paid $13.75. The trial court found that the defendant had displayed a gross indifference to employment possibilities; that defendant had failed to pursue gainful employment as would be expected of a man with responsibilities; that by his own negligence and indifference defendant lost his only two jobs after discharge from the service; and that defendant's lack of income was due entirely to his attitude and indifference. The court further found that defendant had not made a good faith effort to comply with the sentence imposed May 8, 1974, and that defendant's conduct amounted to an intentional refusal to pay as ordered. The court concluded that defendant's conduct constituted contempt of court. Pursuant to section 5—9—3(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—9—3(b)), the trial court sentenced defendant to 20 days' imprisonment and ordered him to commence payment of $50 per month as previously ordered.

■■■ The power of a court to enforce its decree by imprisonment for contempt is limited to willful and contumacious refusal to obey the order. (*Shapiro v. Shapiro* (1969), 113 Ill. App. 2d 374, 252 N.E.2d 93.) The courts of Illinois have traditionally shown a reluctance to deprive an individual of his liberty for failure to pay money unless that individual has the money within his power, or had the money and wrongfully disposed of it. (See *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472; Ill. Const. 1970, art. I, §14.) In *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 306 N.E.2d 604, the court noted:

> "Not every order for payment of money is enforceable by imprisonment for contempt. It is only where the disobedience is willful. [Citations.] There is no contempt where the failure of a person to obey such an order is due to poverty, insolvency or other misfortune [citations] unless such person's inability to pay is the result of a wrongful or illegal act or he has willfully placed himself in such a position." (16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606.)

Under the default statute (Ill. Rev. Stat. 1973, ch. 38, par. 1005—9—3(b)), the court may not order imprisonment for failure to pay a fine if a defendant demonstrates either that his default was not due to his intentional refusal to pay, or that it was not due to a failure on his part to make a good faith effort to pay. The burden is on defendant to exculpate his default. *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 1077, 293 N.E.2d 633, 637.

The parties agree on the governing principles of law. Furthermore, the trial court's findings as to the disposition of the income earned by defendant provide defendant with "poverty" as a valid defense to a contempt charge unless defendant's inability to pay is the result of a wrongful or illegal act, or defendant has willfully placed himself in such position. (*Sullivan.*) There is no contention that defendant has committed any wrongful or illegal act. The State argues that defendant, by his slothful attitude toward maintaining employment, has "willfully placed himself in such a position" that he is unable to pay, and that such behavior constitutes the willful disobedience of the court's order. Defendant submits that his employment record does not constitute contempt.

The State, citing *Sullivan*, in which nonpayment of court ordered monies was held to not constitute contempt, stresses that contempt was not found there because the alleged contemnor was physically unable to work except in the insurance business, where he could not find work. We do not believe that the health of the alleged contemnor is controlling. In *Sullivan*, the defendant was not only unable to work in available employment, but he also lacked the resources to comply with the court's payment order. Upon the facts in *Sullivan*, the State can only speculate as

to that court's holding had the defendant been able to engage in available employment.

■■ The failure to secure and maintain employment by itself does not amount to willfully placing one's self in a position of inability to comply with a court order. A defendant does not willfully place himself in a position of inability to pay money unless he has ownership, either direct or constructive, of the means of compliance. Mere access to employment is not the equivalent of such ownership. By demonstrating the lack of ownership of any money with which to comply with the court order, and only an able but unwilling body with which to procure the necessary funds through employment, defendant has demonstrated that his failure to pay was not intentional.

■■ Moreover, it is fundamental that a court cannot compel a man to work. (*Bradshaw v. Bradshaw* (1939), 23 Tenn. App. 359, 133 S.W.2d 617, 619.) The substance of the court's order, however, is to punish defendant for failing to work. As such, the action of the trial court amounted to an abuse of discretion.

Reversed.

SIMKINS, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

In factual context, defendant entered a negotiated plea in which it was agreed that he was to pay $50 per month to be applied upon the fine, restitution and court costs. Incident to the proceedings he filed a statement that he was earning $398 per month. The opinion recites his discharge from the Marine Corps by reason of undesirable conduct, his two short periods of subsequent employment and reasons for discharge and his purported efforts to obtain employment.

The trial court found that there is "no evidence that defendant is not healthy and physically capable." The "chronic 'acute laryngitis' " in evidence appears to have been the stated reason for the failures to report for work which resulted in each dismissal. There is no affirmative evidence supporting a conclusion of general disability for employment.

Section 5—9—3(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—9—3(a)) provides that the default in the payment of a fine may be punished by imprisonment upon a finding of contempt. In subparagraph (b), nonpayment supports a finding of contempt:

"Unless the offender shows that his default was not due to his intentional refusal to pay, or not due to a failure on his part to make a good faith effort to pay, * * *."

The measure of the conduct which constitutes contempt is stated in the disjunctive.

The opinion cites *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 306 N.E.2d 604; *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633, and *Shapiro v. Shapiro* (1969), 113 Ill. App. 2d 374, 252 N.E.2d 93. Each stated case concerned a civil contempt in which the proceedings were designed to enforce relief for a party. The language in those opinions may have some relevance in the determination of "[h]is intentional refusal to pay." It is not apparent, however, that the language in such opinions is properly applied as a standard in determining whether the default "[w]as not due to a failure on his part to make a good faith effort to pay * * *." To so interpret the statute would make the language of the latter statement meaningless.

It is suggested that the standard of a good faith effort is more properly measured in *People v. Rezek* (1952), 410 Ill. 618, 103 N.E.2d 127, *cert. denied*, 343 U.S. 965, 96 L. Ed. 2d 1362, 72 S. Ct. 1059, where a corporate officer was held in contempt for failure to produce records by a *subpoena duces tecum*. Defendant asserted inability to comply because he did know where the records were and stated a belief that the records were in the possession of another.

In affirming the order finding contempt, the court noted the duties under a *subpoena duces tecum* and said:

> "The inability which excuses, however, must be real. Self-created inability will not suffice; nor will passive inactivity when reasonable effort might secure compliance." (410 Ill. 618, 628, 103 N.E.2d 127, 132.)

The opinion found that there had been no steps taken to attempt to comply.

In *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472, the trial court sentenced for contempt upon a failure to comply with an "agreed order" to abate pollution. Defendant contended and the appellate court determined that there was an inability to comply with the order by reason of the unavailability of design details and bids. In reversing the appellate court, the supreme court said,

> "The record reflects not only a lack of diligence upon his part as well as * * * but also it may be inferred that there was a negligent if not intentional disregard in terms of the order * * *." 59 Ill. 2d 131, 138, 319 N.E.2d 472, 477.

The court said:

> "Defendant also argues that its inability to comply with the terms of the agreed order precludes a finding of contempt * * *. The corollary to this rule, however, prevents assertion of the

defense of inability where the contemnor has voluntarily created the incapacity. [Citations.]" 59 Ill. 2d 131, 137, 319 N.E.2d 472, 476.

Other statutes of the State include as public policy requirements that one may be required to seek, or be available, for work. (Ill. Rev. Stat. 1973, ch. 23, par. 4—1.8.) Section 11—20 of the same statute requires recipients of public aid to register for employment and to accept bona fide offers of employment. Section 500 of "An Act in relation to a system of unemployment insurance" (Ill. Rev. Stat. 1973, ch. 48, par. 420), provides that eligibility to receive benefits requires registering for employment and actively seeking work.

As suggested in the concurring opinion by Mr. Justice Blackmun in *Tate v. Short* (1971), 401 U.S. 395, 28 L. Ed. 2d 130, 91 S. Ct. 668, the reversal of the judgment in this case may discourage the use of fines by the courts.

There is apparent potential for discrimination if, as suggested, the trial court is required to consider the financial resources of a defendant in determining whether to sentence by fine or imprisonment. (See ABA Standards, Sentencing Alternatives and Procedures par. 2.7(c) (1968).) It appears that the appropriateness of a fine as a deterent, or as a corrective measure, may necessarily be determined in terms of financial resources of the defendant.

An equally undesirable result arises as noted in *Williams v. Illinois* (1970), 399 U.S. 235, 244, 26 L. Ed. 2d 586, 595, 90 S. Ct. 2018, for the inability of the State to enforce sanctions for failure to pay a fine may result in serious:

> "[I]nverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for non-payment whereas other defendants must always suffer one or the other conviction."

At the time the fine was imposed through plea negotiation, the defendant was able to pay the fine in installments. ABA Standards, Sentencing Alternatives and Procedures par. 2.7(b) (1968); *Williams v. Illinois* (1970), 399 U.S. 235, 245, 26 L. Ed. 2d 586, 595, 90 S. Ct. 2018, footnote 21.

The conclusion of the trial court that defendant did not "make a good faith effort to pay * * *" is supported by the record and I would affirm the judgment.