THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES SCOTT HOUSE, Defendant-Appellant.

Fifth District    No. 80-424

Opinion filed July 28, 1981.

John H. Reid and Jean Marie Reyes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terrence J. Hopkins, State's Attorney, of Benton (Martin N. Ashley and Gaye Bergschneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Following a trial by jury in the circuit court of Franklin County defendant, James Scott House, was convicted of burglary and sentenced to four years probation, conditioned upon 18 months periodic imprisonment and a restitution payment of $3,000 to the victim of the burglary. On appeal defendant contends the sentence was improper because: (1) it was excessive in view of the nonviolent nature of the offense and defendant's youth and lack of substantial prior record; (2) the order of restitution was erroneous since defendant was convicted only of burglary and was acquitted of the underlying theft charge which gave rise to the victim's loss; and (3) the order of restitution was improper without conducting a presentence hearing to determine defendant's financial capacity to make such payments.

The burglary for which defendant was convicted occurred at the home of Ronald Baker in rural Benton at approximately 2 p.m. on October 9, 1979. Baker testified that on that date no one was home and at that time an unauthorized entry into his home was gained by breaking through a large window at the rear of the house. Baker stated that several items were taken, and during the trial he identified both a remote control color television and a gold coin and chain, which had been recovered by police. Baker estimated the value of the gold coin and chain to have been $1,000 at the time of the burglary and the value of all stolen jewelry to have been $10,000.

Defendant was linked to the burglary of Baker's home primarily through the testimony of Frank and Scott Dunbar, two cousins who testified in substantially similar terms. They each admitted their own

involvement in the crime, stating that on the afternoon in question they were driving around in Scott Dunbar's car when they decided to pick up their friend, the defendant, for a trip to Benton Lake. However, since it was raining, Scott Dunbar instead drove the three of them to the Baker residence, which, according to the Dunbars, the trio agreed to burglarize after defendant stated no one was home. Both Dunbars testified that defendant and Frank Dunbar went to the rear of the house and entered it after throwing a gas can through a bedroom window. They then let Scott Dunbar into the house. Scott Dunbar and defendant searched the premises while Frank Dunbar carried a television set to the car. According to the Dunbars all three of them participated in removing items from the Baker residence. The Dunbars stated that several of the stolen items were sold by them and several more were stored at a friend's residence. The items stored at the friend's residence were recovered by police and identified by the Dunbars at trial. Even though the Dunbars were admittedly involved in the crimes they received immunity from prosecution in exchange for their testimony against defendant. During cross-examination both boys testified that their fathers had served as Illinois State policemen. In addition they shared an uncle who was a Franklin County deputy sheriff. Despite these admissions both Dunbars denied receiving so much as a hint that they had been granted immunity because of their family's law enforcement ties.

The jury convicted defendant of burglary but acquitted him of theft, and a sentencing hearing was held. At the sentencing hearing Ronald Baker and his wife, Cybil, testified on behalf of the State, and defendant testified on his own behalf. Each of the Bakers expressed the fear that had been felt by their family because of defendant's continued presence in the neighborhood during the pendency of this litigation. She stated that her three children were especially fearful of defendant when their paths crossed because defendant had spoken to their daughters in an intimidating manner. Ronald Baker testified as to the extent of their losses. He stated that he was only partially indemnified by insurance coverage. Baker admitted receiving insurance indemnification of approximately $2,700, which covered the damage done to his home and the loss of household items. Baker stated that he had received no indemnification for jewelry losses, which he put at $9,750.

Defendant stated that he was only 19 years old and expressed his remorse for becoming involved in the burglary. According to defendant, before he knew what was happening Scott Dunbar pulled his car into the Bakers' driveway and Frank Dunbar got out of the car and threw the gas can through the window. Defendant admitted entering the home after the break in but denied removing any items from the home, stating that he spent most of his time quieting a barking dog.

Defendant expressed a desire to complete high school and to seek professional counseling. He also indicated that he would make restitution if he were able to do so, but he was currently unemployed though he had worked steadily in the past. Defendant admitted being late for the first day of trial because of a delay in returning from Houston, Texas. Although defendant had gone to Houston without the permission of the court which had granted him bail, it was undisputed that he had returned voluntarily. Following defendant's testimony the trial court fined defendant $1,000 and sentenced him to four years probation conditioned upon payment of $3,000 restitution and 18 months periodic imprisonment. The terms of periodic imprisonment were that defendant was to be released from prison from 6 a.m. to 6 p.m. on weekdays and from 6 a.m. to noon on Saturdays, if employed, but if not employed he would be released only from 7 a.m. to 1 p.m. on Mondays, Wednesdays and Fridays.

According to the undisputed presentence report defendant's only prior problem with the law had been a 1979 misdemeanor conviction for battery. In view of defendant's insubstantial criminal record and in view of his youth and the nonviolent nature of the burglary offense, defendant contends that his sentence was excessive.

■■■ The courts of this State have long recognized that a trial court has great discretion in imposing sentence upon even a youthful offender. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) This was a senseless crime which directly contributed to the large pecuniary loss suffered by the Bakers. In addition, even though defendant's previous criminal record consisted of a single misdemeanor conviction, that conviction had occurred only a few months prior to the present burglary. Under similar circumstances penitentiary sentences have been approved on appeal. (*People v. Kail* (1975), 28 Ill. App. 3d 244, 328 N.E.2d 33; *People v. Krouse* (1972), 7 Ill. App. 3d 754, 288 N.E.2d 543.) We cannot conclude that the sentence here was an abuse of discretion.

■■ ■ We also cannot consider the sentence improper in view of the treatment given defendant's two companions. It is well recognized that "[f]undamental fairness and respect for the law require that defendants similarly situated may not receive grossly disparate sentences." (*People v. Henne* (1973), 10 Ill. App. 3d 179, 180, 293 N.E.2d 172, 174.) However, this case does not present an analogous situation. Here defendant's companions were given immunity, a decision that resides exclusively with the prosecution. (*People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910.) Disparate treatment created by a grant of immunity does not fall within the *Henne* framework. An alleged misuse of immunity-granting power does not speak to the guilt, innocence or culpability of one who has committed a crime. The courts must deal with convicted and sentenced defendants according to the applicable statutes. No exceptions are made

there for special consideration to be given to one whose companions in crime are removed from the prosecution process by a grant of immunity. Any misuse of the immunity-granting process must be redressed by political processes. It is not a matter for the judiciary to rectify by imposing some sort of penalty upon the immunity-granting agency by refusing to follow the statutes and the law in imposing a penalty upon the unfortunate one who has been convicted.

■■ Defendant also contends that his sentence was improper since his probation was conditioned upon a payment of $3,000 restitution because he was acquitted of theft and the only loss incurred by the burglary was damage to a window.

Section 5—5—6(b) of the Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(b)) provides that restitutionary payments may be ordered as part of a criminal disposition so long as they do not "exceed the actual out of pocket expenses or loss to the victim proximately caused by the conduct of the defendant * * *." The financial loss incurred as a result of the burglary should not be limited to damage occasioned by the entry. The financial loss suffered by the Bakers was a natural consequence of and flowed from the illegal entry. To paraphrase the statute, the financial loss of the Bakers was proximately caused by, and was a foreseeable result of, defendant's conduct in committing the burglary.

We find the case cited by defendant to be readily distinguishable. In *People v. Jones* (1980), 81 Ill. App. 3d 367, 401 N.E.2d 287, defendant was placed on probation for burglary, and the State sought to revoke the probation on the basis of a subsequent robbery. There the appellate court ruled that a restitution order in favor of the robbery victim was improper since it was extraneous to the burglary conviction for which sentence was being re-imposed. A similar result was reached in *People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267, where the supreme court held defendant could be ordered to make restitution for checks he was convicted of fraudulently issuing, but not for other fraudulent checks upon which he was not convicted. (Also see Mr. Justice Green's discussion of *Mahle* in his dissent in *People v. Knowles* (1980), 92 Ill. App. 3d 537, 541, 414 N.E.2d 1322, 1326.)

■■ Defendant also contends that the order of restitution was improper in view of the procedure used. Sections 5—5—6(a) and 5—6—3(b)(9) of the Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—6(a) and 1005—6—3(b)(9)) state that in order to determine the amount and conditions of restitutionary payments the court shall conduct a pre-sentence hearing to determine defendant's ability to pay. It has been recognized that a separate presentence hearing on this issue is not jurisdictional. (*People v. Pitts* (1980), 83 Ill. App. 3d 738, 404 N.E.2d 857.)

Because it is not jurisdictional, defendant has waived the issue of failing to object in the trial court. This result is reasonable on the facts of this case since it was shown that in the past defendant had shown an ability to earn money. In any event, since no schedule for payments was ordered, defendant would have until the end of his probationary period to make restitution, and even then a finding of contempt or revocation of probation would require the State to prove a willful failure to pay. (*People v. Bullard* (1977), 52 Ill. App. 3d 712, 367 N.E.2d 1017; *People v. Harris* (1976), 41 Ill. App. 3d 690, 354 N.E.2d 648.) Since there was evidence of defendant's likely ability to earn money by gainful employment and since defendant does not forfeit his right to raise this issue later, we find no error in the order for restitution.

Affirmed.

HARRISON and WELCH, JJ., concur.